Elizabeth Josephine FINE, Plaintiff
and Appellant,

v.

James O. FINE, Defendant and Appellee.

Civ. No. 9237.

Supreme Court of North Dakota.

Dec. 31, 1976.

Daniel J. Chapman, Bismarck, for plaintiff and appellant.

Lundberg, Nodland & Schulz, Bismarck, for defendant and appellee; argued by Charles W. LaGrave.

PEDERSON, Justice.

The judgment of the district court of Burleigh County, from which the appeal is taken, grants the plaintiff, Elizabeth J. Fine, a divorce from the defendant, James O. Fine, on the ground of irreconcilable differences, makes a division of the property of the parties, and awards alimony to the plaintiff in the sum of $150.00 per month for a period of one year.

Both parties concede on appeal that the divorce was properly granted on the ground of irreconcilable differences. The issues on appeal are: (1) whether the trial court erred as a matter of law in making its division of property under the mistaken belief that property acquired before the marriage and separately owned by one of the spouses could not be awarded to the other spouse; (2) whether the findings of fact, alimony award, and property division are clearly erroneous.

James and Elizabeth Fine were married on October 12, 1968, each for the second time. James had four children from his previous marriage: Charles, Rebecca, Janel and Nathan, each of whom lived with the parties for some period of time during the marriage. The two youngest children, Janel and Nathan, lived with the parties throughout the marriage. Elizabeth had three children by a previous marriage: Constance, Pamela and Daniel. Of these children, only Pamela and Daniel lived with the parties during the marriage.

It appears from the evidence that the two families blended into one family, with both James and Elizabeth becoming close to each other's children. Each parent helped with the daily tasks of raising a family, and contributed in varying degrees to the improvement of the family home and other properties owned by the parties.

In its memorandum decision the trial court found that, at the time of his marriage to Elizabeth, James owned the following property: "a home in Bismarck complete with appliances, furniture and furnishings, subject to a mortgage; a 348 acre farm at Sheyenne, North Dakota; an $800.00 equity in a grain elevator at Sheyenne, North Dakota; an automobile; a residential lot in Highland Acres, Bismarck, North Dakota; and approximately $10,000 in cash savings."

Elizabeth contends, on appeal, that in awarding what remains of this property to James, including the home in Bismarck, the trial court mistakenly believed that it could not take into consideration property owned by James prior to the marriage when determining an equitable property settlement. The relevant statute which provides for permanent alimony and division of property in a divorce action is Section 14–05–24, NDCC:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

While there may have been some confusion in the past as to the jurisdiction

of the court in a divorce action to award the separate property of one spouse to the other [see *Fleck v. Fleck,* 79 N.D. 561, 58 N.W.2d 765 (1953)], it is now well settled that the court has such power, even when that separate property was acquired before the marriage. *Bellon v. Bellon,* 237 N.W.2d 163, 165 (N.D.1976). In that decision we stated:

"Although *Fleck v. Fleck, supra,* cited this statute, we do not construe the case as holding that the court lacks jurisdiction to determine the distribution of the property of either party in making an equitable distribution. * * *

"We said in *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966), at syllabus 7, that one of the factors to be considered in a division of property between the parties in a divorce action is whether the property was acquired before or after the marriage. We have consistently held that in making an equitable distribution the court shall consider all of the property of the parties, both jointly and individually owned. See *Agrest v. Agrest,* 75 N.D. 318, 27 N.W.2d 697 (1947), and *McLean v. McLean,* 69 N.D. 665, 290 N.W. 913 (1940)."

■ The fact that property subject to distribution pursuant to Section 14–05–24 was acquired prior to the marriage by one of the parties is a consideration weighing in that spouse's favor, but it does not prevent the court from awarding part or all of that property to the other spouse should an equitable distribution require it.

■ While we agree that appellant has stated the correct rule regarding division of property in a divorce action, we are not persuaded that the trial court misconceived the law in making its property distribution in this case. A finding by the trial court is not to be disturbed unless it is clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law. See *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641, syllabus ¶ 1 (N.D.1976).

■ A finding that a particular division of property is equitable is appropriately dealt with as a finding of fact. *Scheid v. Scheid,* 239 N.W.2d 833 (N.D.1976); *Grant v. Grant,* 226 N.W.2d 358 (N.D.1975). Nothing in the court's memorandum decision, findings of fact, or conclusions of law indicates that the court's division of property was induced by an erroneous view of the law. Mrs. Fine argues that paragraph XI of the findings of fact so indicates:

"The Court finds that the evidence clearly establishes no property was accumulated by Mr. Fine during the marriage and *that* the plaintiff is not entitled to any of the property still owned by Mr. Fine." [Emphasis added.]

■ Apparently Mrs. Fine's interpretation would require us to substitute the word "therefore" for the italicized word. We do not so interpret the paragraph. When the court has requested trial briefs from both parties on the law and the facts, as here, and when such briefs contain a correct exposition of the point of law in issue, we cannot arbitrarily assume that the court chose to ignore it. In *DeForest v. DeForest,* 228 N.W.2d 919, 924 (N.D.1975), a child custody case in which we were unable to determine if the lower court had considered the best interests of the child, we said:

"Unfortunately in the instant case, neither in the finding on custody nor in the oral opinion do we find any language which indicates that the trial court either considered or found that it was in Peggy's best interests or least detrimental to her that the split custody arrangement be made. * * *

* * * * * *

"The purpose of Rule 52(a) is 'to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment it entered thereon.' *Ellendale Farmers Union Cooperative Ass'n v. Davis,* 219 N.W.2d 829, 836 (N.D.1974). * * *

* * * * * *

"Before we make a determination of whether the findings of fact are 'clearly

erroneous,' we must understand the basis for the decision of the trial court.

\*     \*     \*     \*     \*     \*

"A finding of fact on a controlling issue which fails to show the basis for a trial court's conclusion is held to be clearly erroneous."

Rule 52(a), NDRCivP, provides in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment;"

We have said repeatedly that findings of fact and conclusions of law should be stated with sufficient specificity to assist the appellate court, by affording it a clear understanding of the trial court's decision. *Matson v. Matson,* 226 N.W.2d 659 (N.D. 1975). The appellate court's task of review is made all the more difficult by the practice used here of simply incorporating as conclusions of law "the foregoing findings of fact." Such a procedure is not in strict compliance with Rule 52(a). By the use of a Rule 52(b) motion, the trial court's findings could have been clarified.

Despite these shortcomings, we do not feel justified in remanding, as we did in *DeForest v. DeForest, supra,* on the basis of an erroneous view of the law. We must conclude that the trial court, in requesting trial briefs on the applicable law and facts in the case, and awarding to Mr. Fine all of his previously and separately owned property, considered the time of acquisition of the property to permit such award, as in its discretion it had authority to do, but there is no evidence that the court interpreted the law to mandate that result.

Although not induced by an erroneous view of the law, Mrs. Fine argues that the property division is clearly erroneous because it is without substantial evidentiary support. In this regard, Mrs. Fine challenges several of the trial court's findings of fact, including paragraphs III and V of the findings, and the determination of fault found in the memorandum decision. The relevant portion of paragraph III of the findings of fact states:

"During the period of time the defendant and plaintiff in this action were married the defendant spent considerable amounts of his money in maintaining and improving his home and providing for the support of his previous family and his new one. During the first three years of marriage there were spent for improvements, food, and maintenance of the family and cars the sum of $90,000.00. During the first years of said marriage, Mr. Fine was receiving less than $1,000.00 per month in salary."

It is Mrs. Fine's contention that there was no substantiation for the trial court's conclusion that Mr. Fine had suffered a diminution of assets during the first three years of marriage in the sum of $90,-000.00. This conclusion was based upon Mr. Fine's testimony. When questioned about this on cross-examination, little information was elicited as to the specific nature of these expenditures. We are asked to declare this finding clearly erroneous because no itemization of these expenditures was attempted by Mr. Fine, and because appellant feels Mr. Fine did not wish to make his assertion of this diminution of his assets an important basis of the property division. We think the finding was not clearly erroneous. There is substantial evidentiary support for a fact which is established by direct testimony when that testimony remains unrefuted throughout trial by conflicting or contrary evidence. We are not left with a definite and firm conviction that a mistake has been made.

Mrs. Fine also challenges several factual conclusions found in paragraph VI of the findings of fact, which reads:

"During the marriage of the parties herein, the plaintiff Elizabeth Fine purchased Bismarck Secretarial Service. The value of the service was established at $15,000.00. During said marriage Mrs. Fine was also receiving support payments for her minor children from a former husband. She also collected settlements on some malpractice actions that she in-

stituted against Doctors. She also has been receiving between $400.00 and $500.00 per month from Bismarck Secretarial Service. All of the funds received for support, settlements from malpractice actions and payments from the Bismarck Secretarial Service were used by Mrs. Fine for the benefit of herself and her children. Very little, if any of her income, was used for the benefit of the whole family."

It is asserted that while the trial court's finding that Mrs. Fine's Bismarck Secretarial Service is worth $15,000 is essentially correct, it fails to take into consideration the fact that almost that amount in loans is outstanding against the business. More importantly, appellant challenges the court's finding that she is receiving between $400.00 and $500.00 per month from this business. While it is true that Mrs. Fine testified that she was taking out between $300.00 and $450.00 from the business each month, other testimony, including her own later testimony, established that she had taken out between $500.00 and $600.00 per month. In light of this testimony, the court's finding that she received between $400.00 and $500.00 each month from the business is not clearly erroneous.

■ The court also found in paragraph VI of the findings of fact that, during the marriage, Mrs. Fine collected settlements on some malpractice actions against doctors. Appellant contends that there was only one action, for which she recovered $5,000.00. However, there was testimony that during the marriage Mrs. Fine instituted suit against a local physician for recovery of $8,000.00 and against a local cleaning establishment for recovery of $750.00. Although there was a misstatement of fact in the finding, the testimony shows that there was a malpractice action against only one doctor. There is no showing how that misstatement prejudiced Mrs. Fine in the property award.

■ Mrs. Fine also challenges the finding of the court in its memorandum decision that the parties were equally at fault in causing the breakup of the marriage. There appears to be some conflict of evidence with respect to allegations of physical abuse, alcoholism, and failure to communicate. Similarly, evidence as to which party first requested the divorce is in dispute. We do not think the court's finding of equal fault, in view of this conflicting evidence, is clearly erroneous.

■ Although we find no clearly erroneous findings of fact which prejudiced Mrs. Fine, we do think that a more specific indication of the factual, as well as legal, basis of the trial court's decision would aid this court in deducing the factors upon which the judgment of the lower court is based. The basis of the property division must be discernible, at least by deduction or reasonable inference. In *Fischer v. Fischer,* 139 N.W.2d 845, 847, syllabus ¶ 7 (N.D.1966), we discussed the criteria, sometimes called the *Fischer* guidelines, to be considered by a court in distributing property in a divorce action:

"In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective *ages* of the parties; their *earning ability*; the *duration of the marriage*; the *conduct of each* during the marriage; their *station in life*; the *circumstances and necessities of each*; their *health and physical condition*; their *financial circumstances* as shown by the *property owned* at the time, *its value* at that time, *its income-producing capacity,* if any, and *whether accumulated or acquired before or after the marriage*; and such *other matters* as may be material." [Emphasis added.]

■ Some indication that appropriate factors were considered by the trial court in making a property distribution in a divorce action should appear in the memorandum decision or findings of fact and conclusions of law. In this case, the court indicated that it considered the fault of the parties and their present income disparity in arriving at the final property division and the alimony award. While greater specificity is preferred, by reasonable inference we conclude that the pertinent criteria

listed in *Fischer v. Fischer, supra,* were considered by the court in reaching its decision. A Rule 52(b) motion to amend could have more explicitly shown whether a factor was considered which should not have been, or a factor which should have been considered was not.

Judgment affirmed.

ERICKSTAD, C. J., and PAULSON, J., concur.

VOGEL and SAND, Justices (concurring specially).

We concur, but not in the last two paragraphs of the opinion.

We deplore insistence on useless ritual. A mere recitation of the Fischer guidelines will add nothing to findings of fact. It will only be a useless incantation. If the memorandum opinion or the findings refer to the factors which the judge considered determinative, such as the short duration of the marriage and the amount of property owned by the parties at the time they married, this should be sufficient, without a recital of the things he did not consider important.

Further, a reiterated insistence that counsel should have asked for amended findings under Rule 52(b) in practically every case that comes before us will only clog the trial and appellate processes. It will add one more step, and almost always a useless one, to the post-decision paper work. To require a motion and an adversary hearing, or even the filing of briefs, to modify language used in findings of fact will only make for more expense and delay. The paucity of citations to Rule 52(b), F.R. Civ.P., in standard works on Federal procedure shows that this rule is rarely used. It should be rarely used.

We must recognize that judges often write memorandum decisions, from which the prevailing lawyer is asked to draw findings of fact, conclusions of law, and order for judgment. We are not prepared to require all judges to draft their own findings. Since usually the successful lawyer drafts the findings, we are not too surprised to find that occasionally the findings he draws are incomplete or partisan or less than artistic. If the basis for the court's decision is evident from the memorandum or otherwise, we should be content.

We, too, hope that the judges will always make clear the bases for their decisions and hope that lawyers will draft perfect findings. But we doubt that ritualistic resort to Rule 52(b) will take us much farther toward perfection. Artificial rules compelling lawyers to do obeisance to useless formalities will not help us or them or the client whose case must be decided.