Janice M. **BOHNENKAMP**, Plaintiff and Appellant,

v.

James D. **BOHNENKAMP**, Defendant and Appellee.

Civ. No. 9300.

Supreme Court of North Dakota.

May 12, 1977.

Stetson & Jones, Lisbon, for plaintiff and appellant; argued by Wayne P. Jones, Lisbon.

Robert A. Case, Forman, for defendant and appellee.

ERICKSTAD, Chief Justice.

In this case, Janice M. Bohnenkamp, the plaintiff in an action for divorce against James D. Bohnenkamp, appeals from those parts of the judgment delineating property division, awarding custody of the three children of the marriage to James, and ordering that each party pay his own attorney's fees. The plaintiff asked for no alimony.

The parties were married in Forman, North Dakota, on April 9, 1966. During the first summer following their marriage, Jan-

ice lived with her parents in Oakes, North Dakota, while James worked in Fargo, North Dakota, for an excavation company. James began working for Melroe Manufacturing Company, located at Gwinner, North Dakota, in December of 1966. While James was employed by Melroe, he and Janice lived at various times on a farm at Cogswell, North Dakota, in Oakes, and in Gwinner. In June of 1974, they moved into a mobile home on James' parents' farm near Cogswell, at which time James had quit his job with Melroe, and began farming with his father.

Three children were born during the marriage—Brenda, born July 9, 1966; Becky, born September 20, 1970; and Barbara, born September 21, 1971.

The evidence indicates that the parties had experienced marital problems for some time, and that matters worsened when they moved to the farm. Janice testified that she received marriage counselling for an eight or nine month period, attending sessions once or twice a week during that time. James also attended one session at Janice's request. It is unclear from the record exactly when this counselling took place, although it appears to have been after the couple moved to the mobile home on the farm.

On July 12, 1975, Janice took the three children and moved from the farm. She first went to live with her parents in Oakes for about six weeks. Thereafter, she took the children and moved into the home of Kathleen Coleman in Gwinner, North Dakota. In the middle of September, 1975, Janice and the three children moved into a trailer house in Cogswell which was owned by Donald Kadoun.

The parties agree that when they moved to the farm from Gwinner they had very little personal property. They were making payments on the house in which they lived in Gwinner. This house was sold during the period of litigation and the net proceeds were divided equally between the parties. It is in dispute in this case just what the financial position of the couple was at the time they separated. From the time they moved to the farm James has somehow been involved in farming his father's land, which consists of hay and pasture land. James' father, Floyd Bohnenkamp, has been unable to actively farm because of ill health. James and Janice do not agree as to what the business relationship was between James and his father, an understanding of which is essential to determination of the extent of property James owned while he and Janice were still married.

A hearing was held on April 29, 1976, at which time a divorce was granted both parties. It developed at that hearing that Donald Kadoun, who owns the trailer in Cogswell in which Janice and the three children are living, has been living in the trailer with Janice. Janice testified that she and Kadoun had been sharing the same bedroom; that this had been going on for several months at that time; and that the children were aware of the situation. She stated that she and Kadoun planned to get married as soon as her divorce was final.

Following the April 29 hearing a judgment was issued granting a divorce to both parties on the ground of irreconcilable differences and both parties were given permission to remarry immediately. Some items of personal property were awarded Janice, but a final order relating to property matters was delayed pending a second hearing set for August 25, 1976, prior to which time the parties were to sell their house in Gwinner and make other financial arrangements. Temporary split custody of the children was ordered at this time, but the final order as to custody was also to be determined following the August 25 hearing.

At the hearing held August 25, 1976, Janice, represented by new counsel (who is also representing her on this appeal), introduced additional evidence relating to the division of property, as did James. She also stated at this hearing that she was still living with Donald Kadoun, and that they were not yet married but were "engaged". Following this hearing, the trial court entered judgment, (1) awarding permanent custody of the three children to James, subject to visi-

tation rights in Janice, (2) awarding all the farm machinery, livestock, and other property to James, and (3) making no provision for James to pay Janice's attorney's fees. These are the three factors which precipitated this appeal.

## PROPERTY DIVISION

Janice argues, first of all, that finding of fact No. 7, found in the order for judgment dated September 29, 1976, is clearly erroneous. That finding reads:

"7. The Court finds that the Plaintiff and the Defendant had little property, other than their interest in their residence, until about one year prior to the divorce. At this time the parties moved to the farm home of the Defendant's parents, and the Defendant began to engage in farming with his father. That during this period of time the Plaintiff did not have any outside employment and the services rendered by her were limited to those of a housewife. That during this period of time that the marriage deteriorated with the resulting divorce and that during such a period the contributions of the wife to the marriage were not so substantial that additional cash payments from the Defendant to the Plaintiff would be justified. That the record shows that for income tax purposes the Defendant suffered a loss of $5,349.31 on his farm income tax return. The Court does take judicial notice of the fact that the cattle industry has in recent years been extremely depressed and that drought conditions have made matters even worse, and that the Plaintiff has assumed no obligation to support the children, a task assumed by the Defendant alone at this time. The Court further finds that the property or wealth that the Defendant may have amassed is not due to any contribution on the part of the Plaintiff, but, instead, is primarily due to the fact that Defendant entered into farming with his Father, and, if in fact the Defendant has acquired some property, it would, therefore, be due to gifts from the Defendant's parents. It is further the finding and determination of

this Court that the Defendant shall be entitled to retain all of the property now in his possession, including all farm machinery, livestock and other property, and that no further cash payments to the Plaintiff shall be required."

The "bottom line" of this finding is that James has amassed virtually no property through his farming operation. When his assets, including livestock, machinery, and other property, are netted with the debts he has undertaken in order to acquire this property, there is very little left for him to divide with Janice. Defendant's exhibits numbers one and two, being respectively a list of James' property and of his debts, were in evidence before the trial court. The court as indicated found also that any property or wealth James may have accumulated is not due to Janice's efforts, but results from gifts from James' parents. This finding relates to Janice's contention, in the course of her testimony at the second hearing, that James had no agreement with his father to reimburse him and in fact had not yet made any payments to him. Janice argues that James in reality was in partnership with his father and acquired property through this partnership. She has failed, however, to apprise this court specifically of what James' farm property consists of or of what an equitable distribution would be.

In the distribution of property, the following statute applies:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects." § 14–05–24, N.D.C.C.

■ In determining the division of property under this section, the trial court may consider the respective ages of the parties

to the marriage, their earning abilities, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at that time, its income producing capacity, if any, and whether it accumulated or acquired before or after the marriage, and such other matters as may be material. *E. g., Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977); *Johnson v. Johnson,* 211 N.W.2d 759 (N.D. 1973); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). Finding of fact No. 7 which we have quoted earlier in this decision, in itself sufficiently shows a reasonable analysis of material factors.

■ A finding of fact is held to be clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Kostelecky v. Kostelecky, supra; Rambel v. Rambel,* 248 N.W.2d 856 (N.D.1977). Inasmuch as the trial court had substantial evidence to support its findings relative to the distribution of property, and Janice has not, even on appeal, specified with particularity how those findings are erroneous, we hold that they are not clearly erroneous.

### ATTORNEYS' FEES

■ Janice next argues that the trial court abused its discretion in ordering that each party pay his own attorney's fees. In support of this, she argues her own financial condition and maintains that James promised to pay her attorney's fees. In reviewing the transcript of April 29 hearing, we note that Janice testified at that time that James had so promised. In objecting to this testimony, James' attorney asserted that any such offer was with regard to a settlement agreement, which agreement was not consummated. If the trial court believed the latter, such a promise would certainly not be binding.

■ Attorney's fees stemming from an action for divorce are to be awarded in the discretion of the trial court. Section 14–05–23, N.D.C.C. The trial court's decision as to whether or not attorney's fees will be awarded will not be interfered with on appeal unless the appealing party affirmatively establishes that the trial court has abused its discretion. *Hoster v. Hoster,* 216 N.W.2d 698 (N.D.1974); *Johnson v. Johnson, supra; Halla v. Halla,* 200 N.W.2d 271 (N.D.1972).

■ Janice maintains that the trial court abused its discretion in light of her difficult financial straits in refusing to award her attorney's fees. Again this was a matter for the trial court to decide in light of the guidelines announced in *Fischer* and repeated in many subsequent decisions. We have not been shown how those factors when considered would require allowance of attorney's fees to Janice. We thus conclude that Janice has failed to affirmatively establish that the trial court abused its discretion in refusing to award attorney's fees.

### CUSTODY OF THE CHILDREN

■ Janice's final assertion of error is that the award of custody of the three children to James was clearly erroneous as there was no finding that this was in the best interests of the children. The order for judgment of September 29, 1976, addresses this issue in finding of fact No. 4:

"4. That the Defendant, James D. Bohnenkamp, is entitled to be awarded the permanent care, custody and control of the minor children of the parties; provided, that the Plaintiff is entitled to be awarded reasonable visitation privileges with respect to said children, all as hereinafter provided."

It is true that the best interests of the children are not specifically mentioned in this finding. The transcript of the April 29 hearing, however, shows that the trial court was at that time very concerned with the best interests of the children. In the oral decision at the end of that hearing the trial court used the term "best interests of the children" several times and stated that its concern for what would be best for the

**444** ■ 

children was one of the reasons that final custody would not be determined until a later time. In its oral decision following the hearing of August 25, 1976, the trial court spoke of a lack of parental responsibility in both parties and stated its conclusion that if the children were left with the father, they would be more likely to be supported without becoming a charge on the public. We cannot say that such a concern was not also in the best interests of the children. From the court's oral statements we learn that the court was concerned about the negative effects upon the children of living in a home where their mother and the man in the home were not married. We cannot say that this was not a proper concern in determining custody.

The children, living on the farm, would be in close proximity to their grandparents. The record shows that the grandmother is willing to assist in the care of the children.

In *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975), where the award of custody contained no reference to the basis of the trial court's decision, we held that the trial court's findings of fact were inadequate with regard to the question of the best interests of the child. In the instant case we have ample reference in the record, if not in the written findings, of the basis of the court's decision. In *DeForest* we said:

"The purpose of Rule 52(a) is 'to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment it entered thereon.' *Ellendale Farmers Union Cooperative Ass'n v. Davis*, 219 N.W.2d 829, 836 (N.D.1974)." *Id.* at 924.

■ As the record before us discloses the court's concern for the best interests of the children in awarding their custody to their father, finding No. 4 is not clearly erroneous.

For the reasons stated in the opinion, the judgment appealed from is affirmed. Costs shall not be assessed to either party.

VOGEL, SAND, PAULSON and PEDERSON, JJ., concur.