Clifford BENDER, Plaintiff
and Appellant,

v.

Yvonne BENDER, Defendant
and Appellee.

Civ. No. 9542.

Supreme Court of North Dakota.

March 5, 1979.

Rehearing Denied March 26, 1979.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellee; argued by A. William Lucas, Bismarck.

ERICKSTAD, Chief Justice.

Clifford Bender appeals from a district court judgment of divorce on the grounds that the court made an inequitable property distribution. We affirm the judgment.

Clifford Bender and Yvonne Bender were married on September 2, 1955. Four children were born of this marriage, but only one child, Carrie, born June 28, 1960, was a minor at the time of the divorce hearing.

At the time the parties were married, Clifford was a student on the G.I. Bill at the University of North Dakota. He continued to attend college and, in January 1958, he was graduated from the University with a B.A. degree in accounting. Following his graduation, Clifford worked for the State of North Dakota in accounting related positions with the State Board of Auditors, State Auditor, State Board of Administration, and Director of Institutions, respectively. In November 1971, he became Business Administrator at Grafton State School in Grafton, North Dakota. In July 1974, he resigned from this position apparently due to a management change and has not been permanently employed since that time.

Following Clifford's resignation at the Grafton State School in July 1974, he was hospitalized for about three weeks with a disease that is apparently similar to multiple sclerosis. Although Clifford is still hampered by this disease, he agrees that he is not incapable of holding an administrative position similar to those that he held with the State.

Prior to the parties' move to Grafton, Yvonne was not continuously employed, but she was involved with various kindergarten programs. She also attended college at this time, and received a degree in education. In Grafton, Yvonne taught kindergarten for two years.

Following the parties' move to Grafton, marital difficulties began to surface. The parties were ultimately separated and Yvonne began a divorce action in 1974. Yvonne and the family moved to Bismarck and she obtained a teaching position with the Bismarck public school system. She continues to be employed there. The first divorce action was not completed and the parties were reconciled.

The reconciliation was short-lived, however, and on June 10, 1977, Clifford filed a summons and complaint seeking a divorce on the grounds of irreconcilable differences. Clifford asked the court to award custody of Carrie to Yvonne and that the court make an award to Yvonne of reasonable child support. Clifford also asked that Yvonne be permitted to retain possession of a drive-in restaurant that the parties had purchased in 1972 at Medora, North Dakota with a "reasonable allowance . . . for rental on his interest".

Yvonne answered and counterclaimed seeking a divorce on the grounds of irreconcilable differences, custody of Carrie, appropriate child support, and sole title to the drive-in facility that she has operated for a number of years at Medora.

The court awarded each party a decree of divorce, and awarded Yvonne the drive-in restaurant in Medora as her sole property "subject to the lien for the balance of the initial purchase price". The court said:

"this award of property to the defendant [Yvonne] shall include all past and future support obligations of the plaintiff [Clifford], and shall be in lieu of any obligation on his part toward the defendant for support or alimony". The court also decreed that each party retain the personal property in their possession, with the exception of a diamond ring, which Yvonne was ordered to return to Clifford. Yvonne also received custody of Carrie.

Clifford appeals to this court contending that the trial court made an inequitable property distribution.

The law in this area has been stated many times by this court. The applicable statute is Section 14–05–24, N.D.C.C., which provides:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

■ Although there is no clear rule by which division of property or alimony is to be made, and the determination of what is an equitable distribution is within the discretion of the trial court, we have outlined some guidelines to be used by the trial court in making this determination. The *Ruff-Fischer* guidelines provide that in making an award pursuant to Section 14–05–24, N.D.C.C., the trial court may consider the respective ages of the parties to the marriage, their earning abilities, the duration of the marriage and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at that time, its income producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. *Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107, 111 (1952).

■ It is well established that property division need not be equal in order to be equitable. *Haugeberg v. Haugeberg*, 258 N.W.2d 657, 662 (N.D.1977).

■ The trial court's determination on matters of child support, alimony, and division of property are treated as findings of fact and thus are fortified by Rule 52(a), N.D.R.Civ.P. Therefore, we will not set aside these findings unless they are clearly erroneous. A finding of fact is deemed clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Haugeberg v. Haugeberg, supra* at 659.

■ The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court. *Haberstroh v. Haberstroh*, 258 N.W.2d 669, 673 (N.D.1977).

■ Clifford argues that the property division in this case is clearly erroneous because Yvonne was awarded virtually all of the property owned by the parties. He also argues that his position is strengthened because of his poor health and inability to find employment.

As a result of the trial court's division of property, Clifford received approximately $6,300 in cash; silver coins with face value of $670; other coins with approximate value of $2,300; investment at Piper Jaffrey of $900–$1,000; 1974 Ford LTD automobile; personal property of undetermined value; and a diamond ring of over a carat of undetermined value.

Yvonne received approximately $4,000 in cash; personal property of undetermined value; and the drive-in restaurant at Medora, North Dakota.

Clifford argues that the award to Yvonne of the entire drive-in restaurant without any provision for his interest is inequitable.

The restaurant was purchased in the spring of 1972, shortly after the parties moved to Grafton, North Dakota. The total purchase price was $47,500 and at the time of the trial there was $12,000 remaining to be paid. A payment of $20,000 was paid on the restaurant in the first year with $10,000 paid at the time the papers were signed, an additional $5,000 paid August 1, 1972, and the remaining $5,000 paid on September 15, 1972. The $10,000 down payment apparently came from funds that Clifford had saved. The August payment of $5,000 was borrowed from Clifford's father, and the September payment was made from proceeds of the restaurant. The parties sold their home in Bismarck in the fall of 1972, and $5,000 of the proceeds of this sale ($13,000) were used to repay Clifford's father. The remaining payments on the restaurant were made from proceeds of the restaurant.

Yvonne assumed control of the restaurant in the summer of 1972 after the initial management was unsuccessful. With the help of her children, she has managed the restaurant ever since. Clifford's contribution has been preparing tax returns and some book work. He also worked at the restaurant in the summer of 1976, at which time he went to Bismarck once a week to pick up supplies and emptied most of the garbage cans.

The trial court found that Yvonne had actively managed and operated the drive-in since July 1972, and its success and value were a direct result of her efforts, for which she received no pay. The trial court also found that Clifford had contributed very little to the family support since the summer of 1974. Furthermore, the court found that Yvonne has been the primary support of the family since the summer of 1974 through her earnings as a teacher in the Bismarck public school system.

The trial court stated in its memorandum opinion that in awarding the entire restaurant to Yvonne it was only considering the initial investment of the parties because of its belief that Clifford had made no significant contribution to the drive-in enterprise.

Additionally, the trial court found that Clifford had achieved the status of a full time gambler and that he continues to support himself without a formal occupation. The trial court stated in its memorandum opinion that while Yvonne worked, Clifford "pursued the occupation of gambling and kept their assets at a minimal level." The court also stated that Clifford's "contribution [to the success of the drive-in] has been to take the profits through 1976."

The trial court was obviously of the opinion that but for the hard work of Yvonne, the drive-in would not have been successful. The court considered the long hours of Yvonne; her support of the family during these years; Clifford's lack of support even though he was capable of providing it; Yvonne's support of Carrie until majority; and her continued support of the two children that were attending college.

In *Agrest v. Agrest*, 75 N.D. 318, 27 N.W.2d 697 (1947), this court dealt with an analogous situation. In *Agrest*, the court awarded the wife the homestead, and the other property was divided equally. The homestead had been built from profits of the wife's separately owned business and the wife had supported the husband at times during the marriage. The court also awarded the wife no alimony.

After reviewing the record in this case and the applicable authority, we are not left with a definite and firm conviction that a mistake has been made by the trial court. The trial court apparently concluded that Clifford was gambling while the rest of the family worked to save the business. From the evidence submitted in this case, we cannot say that such a conclusion was clearly erroneous. Accordingly, we affirm the judgment.

PAULSON, PEDERSON and SAND, JJ., and MUGGLI, District Judge, concur.

MUGGLI, District Judge, sitting in place of VANDE WALLE, J., disqualified.