**Lawrence J. HESCH, Plaintiff and Appellant,**

v.

**Mary Jean HESCH, Defendant and Appellee.**

**Civ. No. 9913.**

Supreme Court of North Dakota.

July 15, 1981.

Sproul, Lenaburg, Fitzner & Walker, Valley City, for plaintiff and appellant; argued by Dean A. Lenaburg, Valley City.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for defendant and ap-

pellee; argued by James A. Wright, Jamestown.

SAND, Justice.

This is an appeal from a district court judgment in which the plaintiff, Lawrence J. Hesch (Lawrence), and the defendant, Mary Jean Hesch (Mary Jean), were granted a divorce from each other. The issues presented by this appeal all relate to the district court's division of property.

Lawrence and Mary Jean were married on 27 May 1961. Three children were born during their marriage: Leslie Hesch, born 28 August 1962; Terry Hesch, born 20 November 1964; and Cindy Hesch, born 22 January 1969. At the time of the divorce Lawrence was 41 years old and was in good health, and Mary Jean was 38 years old and was also in good health.

For approximately the first three years of the couple's marriage, they farmed near Eckelson, North Dakota, with Lawrence's father. The record reflects that Lawrence and Mary Jean purchased some of their farmland near Eckelson, but does not reflect the amount of acres they purchased. Sometime in 1965 they sold their farmland in Eckelson and started ranching near Woodworth, North Dakota, where they have lived until their divorce. During the first years of their marriage Mary Jean performed manual labor on the ranch which included working in the hayfields and helping with the calving, in addition to her household chores. However, during the last four years of the marriage, Mary Jean has been employed outside the ranch, and she is currently employed as a bookkeeper at the Woodworth Elevator where she makes approximately $500.00 a month.

At the time of the trial the couple owned approximately 3,080 acres of land in the Woodworth area which they had acquired during the course of their marriage. Approximately 2,100 acres of this land was used for their ranching operation and the remainder of it was farmland which was rented to third parties. Lawrence and Mary Jean acquired approximately 1,200 acres of the real property as a gift from Lawrence's parents, Garvis and Bernice Hesch. Lawrence and Mary Jean also received 100 head of cattle as a gift from Garvis Hesch.

The district court assigned the following values to the couple's property:

| | |
|---|---|
| 3,080 acres of real property and house and buildings ($300.00 per acre) | $924,000 |
| 180 head of cattle | 90,000 |
| Certificate of Deposit in Mary Jean's name (acquired from Mary Jean's parents) | 25,000 |
| Full line of farm machinery and equipment | 45,000 |
| 1975 Buick, 1978 Toyota, two pickups, camper, boat and motor, motorcycles, and snowmobiles | 20,000 |

The district court found that $21,000 was still owed on some of the couple's real property.

The district court divided the couple's property as follows:

| Mary Jean | Value |
|---|---|
| **Real Property in Roosevelt Township** | |
| N–½ of Section 10 (320 acres) | $ 96,000 |
| ½ interest of S–½ and NE–¼ of Section 2 (240 acres) | 72,000 |
| S–½ of Section 23 (320 acres) | 96,000 |
| N–½; N–½ SW–¼; NW–¼ SE–¼ of Section 14 (440 acres) | 132,000 |
| **Real Property in Pipestem Valley Township** | |
| S–½ of Section 18 (320 acres) | 96,000 |
| **Personal Property** | |
| Certificate of Deposit in Mary Jean's name | $ 25,000 |
| All household furniture and equipment necessary to establish a home for herself and Cindy | --- |
| 1975 Buick and 1978 Toyota | --- |
| Cash rent installments or equivalent on S–½ of Section 18 and S–½ of Section 23 | 6,440 |
| Cash payment by Lawrence to Mary Jean | 10,000 |
| | $533,440 |

| Lawrence Hesch | Value |
|---|---|
| NE–¼ SW–¼; N–½ SE–¼; SE–¼ SE–¼ of Section 10 (160 acres) | $ 48,000 |
| All Section 11 (640 acres) | 192,000 |
| All Section 15 (640 acres) | 192,000 |
| House and farm buildings | --- |
| Cattle | 90,000 |
| Farm machinery and equipment | 45,000 |
| Two pickups, snowmobiles, motorcycles, boat and motor, camper | --- |
| | $567,000 |

The district court judgment required each party to pay the remaining encumbrances on the contracts for deed to the real property that each received. Based on our calculations these obligations total approximately $13,686 for Mary Jean and approximately $7,314 for Lawrence.

Neither party made any significant objection regarding the distribution of the property on which no dollar value was placed,

and we therefore assume that each party deemed such distribution, standing alone, to be equitable.

The district court judgment also granted custody of Cindy to Mary Jean and custody of Terry to Lawrence. Lawrence was also ordered to pay $200 a month for the support of Cindy. Lawrence appealed from that judgment.

Lawrence, on appeal, contends that the district court's finding of fact as to the total value of the real property is clearly erroneous, and that the district court's determination of an equitable distribution of the marital estate is clearly erroneous.

Section 14–05–24, North Dakota Century Code, requires that the trial court make an equitable distribution of the real and personal property of the parties when a divorce is granted. There are no fixed and rigid rules by which the trial court is to divide the marital estate in a divorce case. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D.1980). For instance, there is no requirement that a property division in a divorce case be equal in order to be equitable. *Rudel v. Rudel*, 279 N.W.2d 651 (N.D.1979). Nor is there any requirement that the property acquired by one of the spouses prior to the marriage cannot be given to the other spouse in a property division. *Schuchard v. Schuchard*, 293 N.W.2d 428 (N.D.1980); *Fine v. Fine*, 248 N.W.2d 838 (N.D.1976). The ultimate objective is to make an equitable distribution, and a determination of what is an equitable division lies within the discretion of the trial court and depends on the facts and circumstances of each case. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979).

The following factors, commonly referred to as the *Ruff-Fischer* guidelines, may be considered by the trial court in making an equitable distribution of property:

"The respective ages of the parties to the marriage; their earning abilities; the duration of and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value at that time; its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952)." *Bosma v. Bosma*, 287 N.W.2d 447, 450 (N.D.1980).

The trial court's determination on matters relating to the division of property are treated as findings of fact and will not be reversed by this court unless clearly erroneous or induced by an erroneous view of the law. *Haberstroh v. Haberstroh*, 258 N.W.2d 669 (N.D.1977). A particular finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on all the other evidence is left with a definite and firm conviction that a mistake has been made. *Nastrom v. Nastrom, supra.* Simply because we might have viewed the evidence differently, had it been presented to us as the trier of fact, does not entitle us to reverse the trial court. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979).

Whenever there is conflicting testimony, the reviewing court will give considerable weight to the findings of the trial court because the trial court is able to see and hear the witnesses, and the reviewing court is not. *Nastrom v. Nastrom, supra.* The trial court is in a better position to accept one version of the facts over another because the judge is able to listen to and observe the demeanor of the witnesses, whereas this court, bound by a cold reading of the transcript, cannot do so.

In this instance the district court found that the 3,080 acres of real property had a reasonable value of $300 per acre for a total of $924,000. This value included the house and farm buildings on the land.

Lawrence points out that he testified that the 3,080 acres had an approximate value of $600,000, which breaks down to approximately $194 per acre. Lawrence asserts that there was no other testimony to support the district court's finding as to the value of the real property other than when he testified on cross-examination that 320

acres could have a value of $400 per acre. However, this excerpt from Lawrence's testimony was shortly after he testified that all the farmland and the pastureland had a value of $200 per acre. Additionally, Lawrence also testified that there was some farmland adjacent to theirs which could have been sold for $265 per acre, but was not sold because one of the owners wanted $400 per acre.

■ Based on the wide range of values testified to by Lawrence and the opportunity of the district court to observe his demeanor, we cannot say that the district court's findings as to the value of the real property are clearly erroneous.

■ Lawrence also asserts that the district court's division of the marital estate was not equitable, and therefore was clearly erroneous.

The thrust of Lawrence's argument in this respect concerns the 100 head of cattle [1] and 1,200 acres of real property which he and Mary Jean received from his father. Lawrence asserts that this property was actually an advance on his inheritance from his father, and that it should not have been included in the marital estate. Lawrence points out that the district court's division of property gave him 180 head of cattle and 1,440 acres of land which he asserts is not much more than he received as a gift from his father. Thus, Lawrence asserts that he received virtually nothing for his efforts in acquiring a substantial estate during his marriage to Mary Jean.

Lawrence cites several cases for the proposition that the trial court should give considerable weight to the factor that part of the property accumulated during a couple's marriage was a gift from one of the spouse's family and was not to be treated as property accumulated by the parties as a joint effort. *Rummel v. Rummel,* 265 N.W.2d 230 (N.D.1978); *Bohnenkamp v. Bohnenkamp,* 253 N.W.2d 439 (N.D.1977); *Grant v. Grant,* 226 N.W.2d 358 (N.D.1975).

In *Rummel, supra,* the husband's father testified that certain property was intended as an advance inheritance to the husband, and we determined that the evidence supported the trial court's finding that the property was intended as an advance inheritance gift for the husband. Therefore, we held that it was not error for the trial court to restore that property to the husband and divide the remaining property equally.

In comparing these cases to the present case, we must keep in mind that the ultimate objective of a property division is to make an equitable distribution of property and a determination of what is an equitable division lies within the discretion of the trial court and depends on the particular facts and circumstances of each case.

In this instance the real property received from Garvis Hesch, father of Lawrence, was deeded to both Lawrence and Mary Jean, and Garvis testified that the property was a gift to both Lawrence and Mary Jean. Furthermore, the trial court made a specific finding of fact which reflects that in making its division of property, it did consider that the couple (jointly) received the real property and cattle from Lawrence's parents.

A review of the trial court's findings of fact as well as its memorandum opinion reflects that the trial court carefully considered the *Ruff-Fischer* guidelines in arriving at its division of property. After carefully reviewing the record and considering all the real and personal property received by each party, we are not left with a definite and firm conviction that a mistake has been made in the trial court's division of property.

Accordingly, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSEN, and VANDE WALLE, JJ., concur.

---

1. Lawrence testified that at the time of his marriage he had over 100 head of cattle. Later he received 100 head of cattle from his father, but he paid back his father for the 100 head of cattle by giving him replacements.