Lee J. GRANT, Plaintiff/Appellee,

v.

Elinor J. GRANT, Defendant/Appellant.

Civ. No. 9059.

Supreme Court of North Dakota.

Feb. 13, 1975.

F. J. Smith, Bismarck, for defendant-appellant.

Joseph A. Vogel, Jr., Mandan, for plaintiff-appellee.

PEDERSON, Judge.

## CASE SUMMARY

This is an appeal by the defendant, Elinor J. Grant, from the judgment of the district court of Hettinger County granting a divorce, based on irreconcilable differences, to both the plaintiff, Lee J. Grant, and the defendant, Mrs. Grant. The judgment awarded Mrs. Grant a property settlement in excess of $180,000, plus $350 alimony payments every month for the remainder of her life. Prior to oral arguments, Mr. Grant filed a motion to dismiss the appeal.

Judgment affirmed.

## FACTS

The Grants were married in Minneapolis, Minnesota, on September 8, 1938. Since 1939, with the exception of a period in which Mr. Grant served in the armed forces, the Grants have lived in Mott, North Dakota. Mr. Grant became associated with his father in a real estate and farm management business. In addition, Mr. Grant operated an insurance business and, with his father, built a ranching operation.

Throughout the course of their marriage, the Grants have prospered and have accumulated substantial properties and investments. Mr. Grant has always provided the entire financial support for his family. Mrs. Grant has maintained the family home and raised four children. The youngest child was a college sophomore at the time of the divorce action.

Until 1972, the Grants apparently lived a happy and comfortable life. Mr. Grant was a very successful businessman, providing his family with excellent opportunities for travel, education, and material possessions. In 1972, the Grants began to have marital problems. Mrs. Grant alleges that Mr. Grant, after an illness, began to change his habits and demeanor, occasionally using abusive language, losing his temper, and, on one occasion, physically mishandling her. Mr. Grant alleges that Mrs. Grant would not continue normal marital activities with him: no social intercourse, no sexual relations, nor the performance of normal household functions, such as preparing meals and entertaining guests.

Eventually Mrs. Grant became involved in numerous personal activities; bowling, bridge, social clubs, traveling, and spending time at the family lake cottage. During this period of time, Mr. Grant became involved with another woman. Mr. Grant was seen in the company of this woman on several occasions, went fishing with her at Heart Butte Dam, and went on a skiing trip with her. The home life of the Grants became non-existent and Mr. Grant, at Mrs. Grant's request, moved out of the family home in November of 1973.

On November 30, 1973, Mr. Grant commenced an action for divorce against Mrs. Grant on the ground of irreconcilable dif-

ferences. In her answer, Mrs. Grant denied that any irreconcilable differences existed between the parties. Additionally, Mrs. Grant filed a counterclaim which alleged that if any irreconcilable differences existed, such differences resulted from Mr. Grant's activities with other women, his failure to have normal social intercourse with Mrs. Grant, and his departure from the family home.

On February 22, 1974, in an oral memorandum, the district court granted both Mr. Grant and Mrs. Grant a divorce based upon irreconcilable differences. The court ordered the following property settlement:

| Mr. Grant | | Mrs. Grant | |
|-----------|--------|-----------|--------|
| Land | $192,000 | Land | $ 79,200 |
| Office & Equipment | 8,210 | Home & Furnishings | 80,000 |
| Investments | 19,500 | Investments | 21,063 |
| Car | 7,500 | Car | 3,000 |
| | $227,210 | | $183,263 |

The land which was included in this property division was originally given to the Grants by Mr. Grant's parents. Five quarters of land were given to Mr. Grant in his own name and nine quarters of land were given to Mr. and Mrs. Grant jointly. Eleven of these quarters, including the five quarters given to Mr. Grant, are included in the Grant ranch. These eleven quarters are leased to Mr. Grant's mother until 1982 for $3,000 per year. The remaining three quarters awarded to Mrs. Grant have a yearly rental value of about $5,800.

In reaching his property division, the trial judge stated that since Mr. Grant's parents had given land to Mr. and Mrs. Grant jointly and to Mr. Grant separately, Mr. Grant, by his work on the ranch, had earned one-half of the five quarters, and that the other one-half was intended to be a gift to him. Accordingly, the judge excluded one-half the value of these five quarters of land ($61,200) from that available for division.

Both parties were awarded their own personal possessions. In addition, the district court awarded the real estate and insurance business to Mr. Grant. Also, the court awarded alimony payments of $350 per month to Mrs. Grant for the remainder of her life, whether she remarries or remains single. The court permitted a stipulation that Mrs. Grant's life expectancy was 16.72 years, amounting to projected alimony payments in excess of $70,000.

In lieu of accepting the above property settlement, the court gave Mrs. Grant the option to elect a monetary payment schedule for the real property and the household furnishings. This election was to be made within thirty days. However, the parties could not reach an agreement as to the disposition of the property.

On April 11, 1974, a second hearing was held to attempt a final determination of the property settlement. Once again the parties were unable to reach a satisfactory agreement. Mrs. Grant contended that the payment schedule for the home and household furnishings which had been prescribed by the court was unsatisfactory. The parties were unable to agree upon which household furnishings would be personal possessions of either party. The court granted an additional twenty-day period to enable the parties to reach an agreement between themselves. They were unable to reach an agreement.

On May 1, 1974, a third hearing was held. At this hearing the court held that the time in which Mrs. Grant was to have made her election had expired. The court then ordered that the above property settlement would become the final determination of the matter.

## ISSUES

There are three issues to be determined by this court:

### I.

Should this court grant Mr. Grant's motion to dismiss the appeal?

### II.

Was the finding of fact that Mr. Grant was entitled to a divorce clearly erroneous?

### III.

Were the findings of fact as to a division of property clearly erroneous?

## DECISION

### I.

The motion to dismiss the appeal is denied.

■■ It is Mr. Grant's contention that Mrs. Grant has accepted at least some of the benefits granted by the judgment, and thus cannot maintain an appeal from the judgment. This court has long recognized that, where a divorce is granted, a party who accepts substantial benefits under the judgment waives his right of appeal. Tuttle v. Tuttle, 19 N.D. 748, 124 N.W. 429 (1909); Boyle v. Boyle, 19 N.D. 522, 126 N.W. 229 (1910); Williams v. Williams, 6 N.D. 269, 69 N.W. 47 (1896). In Montgomery v. Montgomery, 88 N.W.2d 104, 106 (N.D.1958), we stated:

"By the great weight of authority, it is held that where a decree of divorce awards alimony or property to one of the parties, and the latter accepts any payment of alimony or any part of the property under the decree, such party thereby waives the right of appeal or to a writ of error as to the divorce."

See generally, 29 A.L.R.3d 1184. Before the waiver of the right to appeal can be found to exist, there must be an unconditional, voluntary, and conscious acceptance of a substantial benefit under the judgment. Montgomery v. Montgomery, *supra*; Miller v. Miller, 76 N.D. 558, 38 N.W.2d 35 (1949).

■ Therefore, if Mrs. Grant has made an unconditional, voluntary, and conscious acceptance of substantial benefits under the judgment, she has waived her right of appeal. However, it is impossible to determine from the record the extent of the benefits that Mrs. Grant actually accepted, or if she accepted any of the benefits

awarded by the final judgment entered on May 6, 1974.

We deny the motion to dismiss the appeal.

### II.

The finding of fact that Mr. Grant was entitled to a divorce is not clearly erroneous.

■ Although there has been some confusion on this point in the past, the scope of our review of the findings of fact of the district court in a divorce action is limited by Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides in pertinent part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * * *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.*" [Emphasis added.]

Since August 1, 1971, this court has been applying the "clearly erroneous" test of Rule 52(a), N.D.R.Civ.P., to the findings of fact of a trial court. The "clearly erroneous" test is the appropriate approach to reviewing findings of fact in a divorce action. Hoster v. Hoster, 216 N.W.2d 698 (N.D.1974); Bellon v. Bellon, 213 N.W.2d 376 (N.D.1973); Novlesky v. Novlesky, 206 N.W.2d 865 (N.D.1973); Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972).

This court again points out that the abuse-of-discretion test is not the standard for review of findings of fact in divorce actions. The "clearly erroneous" test of Rule 52(a), N.D.R.Civ.P., is the standard.

In In re Estate of Elmer, 210 N.W.2d 815, 820 (N.D.1973), this court interpreted the term "clearly erroneous" to mean:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. Nee v. Linwood Securities Co., 174 F.2d 434 (8th Cir. 1949); Wright & Miller, Federal Rules of Civil Procedure, Sec. 2585, p. 729 et seq."

Section 14–05–09.1, N.D.C.C., defines irreconcilable differences:

"Irreconcilable differences are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved."

In his findings of fact Judge Kelsch stated:

"That the Defendant caused the Plaintiff to leave the residence, where the parties had been residing, having instructed him to leave, and that she carried on acts which constituted irreconcilable differences between the parties, permanent in nature, and which constituted substantial reasons for not continuing the marriage, making it appear that the marriage should be dissolved, for which reason the Plaintiff became entitled to a decree of divorce from the Defendant."

█ In considering the entire record, we hold that the finding of fact that Mr. Grant is entitled to a divorce is not clearly erroneous.

### III.

The trial court's findings of fact for division of property were not clearly erroneous within the purview of Rule 52(a), N.D.R. Civ.P.

█ In a divorce proceeding, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper. Section 14–05–24, N.D.C.C. There is no rigid rule for determining the division of property in a divorce proceeding, but the ultimate object to be sought is an equitable distribution. Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966). In Fischer, *supra*, at syllabus 7, this court has prescribed guidelines to be followed by the district court when making a property division:

"In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material."

The court further stated:

"In divorce actions the distribution of property between the parties depends on the facts and circumstances of each individual case."

The facts and circumstances to be considered include the condition, needs and conduct of the parties, and the amount of property owned by them, its nature, and the time and manner of its acquisition. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697 (1947).

█ There is some question of whether "the conduct of each during the marriage" should be considered when making a property settlement under a divorce judgment on the ground of irreconcilable differences.

In Novlesky v. Novlesky, 206 N.W.2d 865, 868 (N.D.1973), we answered this question:

"In property divisions, the courts of North Dakota should consider the criteria stated by this court in paragraph 7 of the syllabus in Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966), including '*the conduct of each during the marriage*' [emphasis added]."

In the instant case, Mrs. Grant contends that she should be awarded at least an equal distribution of property. However, as Mrs. Grant points out in her brief, there is no requirement that a property division be equal in order to be equitable. Rohde v. Rohde, 154 N.W.2d 385 (N.D.1967). In Novlesky, *supra*, at syllabus 4, this court held:

"A finding that a particular division of property between the parties to a divorce action is equitable is appropriately dealt with on appeal as a finding of fact. Consequently, a review of this finding is limited to a determination of whether or not it is 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

We hold that the findings for the division of property in the instant case adhere to the *Fischer* guidelines and were not clearly erroneous within the purview of Rule 52(a), N.D.R.Civ.P.

For reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, VOGEL and SAND, JJ., concur.