June R. HULTBERG, Plaintiff/Appellee,

v.

Henning W. HULTBERG, Defendant/Appellant.

Civ. No. 9346.

Supreme Court of North Dakota.

Oct. 12, 1977.

---

1. I would therefore overrule the contrary holding in *Kyllo v. Northland Chemical Co.,* 209 N.W.2d 629 (N.D.1973).

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellant; argued by Robert H. Lundberg, Bismarck.

Kenneth M. Knutson, Minot, for plaintiff and appellee.

PAULSON, Judge.

This is an appeal from the judgment of the district court of McLean County entered on December 27, 1976, which awarded both the plaintiff, June R. Hultberg [hereinafter June], and the defendant Henning W. Hultberg [hereinafter Henning], a separation from bed and board on the basis of irreconcilable differences and divided all of the property of the parties between them. Henning appeals the district court's division of the property and requests either a new trial on that issue or a modification of the judgment regarding the property division.

Henning has raised the following three issues for our consideration:

1. Whether the trial court's division of the assets was based on one or more erroneous interpretations of law requiring its division to be set aside;

2. Whether the trial court committed reversible error by using an extrajudicial report of a court-appointed appraiser without giving the parties an opportunity to cross-examine him; and

3. Whether the trial court committed reversible error by failing to make an equitable division of the property between the parties.

June and Henning were married in North Dakota in 1946. During their thirty years of marriage Henning was engaged in a successful farming operation in McLean County, and June has performed the various duties and responsibilities of a housewife. June also gave piano lessons for a period of ten years to supplement the farm income.

During their marital years June received by gift and inheritance substantial amounts of real and personal property from her father, and Henning inherited approximately $8,500.00 from his parents. June retained title in her name alone to the property she received by gift and inheritance and the income therefrom. All other property acquired by the parties during their marriage was accumulated and held by them in joint tenancy. The farm operation and household expenses were almost entirely paid from the jointly held property of the parties, and not from the plaintiff's separately owned property.

At the time of trial June and Henning owned 960 acres of land as joint tenants, and June owned an additional 400 acres of land in her name alone. The parties had substantial savings of approximately $55,000.00 held in joint tenancy; and June had approximately $75,000.00 in certificates of deposit held in her name alone, or jointly between June and the children of the parties.

During their marriage the parties had four children, all of them boys. At the time of trial all four boys were of legal age.

The judgment of the district court awarded June all of the real and personal property to which she held title in her name alone. The court then divided all of the remaining property equally in net value between the parties. Henning appeals from such property division asserting that it is inequitable and is based upon erroneous interpretations of the law by the district court.

Henning has raised the issue on appeal of whether the district court's division of the property was based upon certain erroneous interpretations of law, requiring the division to be set aside. We conclude that the legal framework upon which the district court divided the property included the following three misinterpretations of law which may have induced the court to make a property division which otherwise would not have been made:

■ 1. The district court apparently held the view that, in the absence of fraud, property held in the sole name of one spouse cannot be divided by the court between the spouses. In the memorandum opinion of the district court filed December 20, 1976, the district court stated:

". . . the Court would find itself in a mathematical conundrum to try to calculate what part of the plaintiff's properties should be divided for the benefit of the defendant, assuming the law would permit this to be done . . ."

In its Conclusions of Law filed December 27, 1976, the district court stated in paragraph II thereof:

"That in the absence of fraud (which has not been shown) properties which the parties have divided between them cannot be divided by the Court and the plaintiff is therefore entitled to all properties in her own name . . . ."

The court's statements demonstrate an erroneous interpretation of the law of this State. In conjunction with a divorce or a separation from bed and board, the trial court clearly has the power to award prop-

erty, the title to which is held solely by one spouse, to the other spouse, or to divide the property between them. *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976); *Voltin v. Voltin*, 179 N.W.2d 127, 134 (N.D.1970). Furthermore, if an equitable distribution requires it, the district court has the power to award to one spouse property acquired solely by the other spouse prior to their marriage. *Fine v. Fine*, 248 N.W.2d 838, 841 (N.D.1976). Proof of fraud is clearly *not* a prerequisite to the court's authority to award the property of one spouse to the other when the court is attempting to make an equitable division of property upon awarding a separation from bed and board.

■■■ 2. The district court apparently held the further view that the law makes it mandatory to divide jointly held property equally in net value between the spouses. In its memorandum opinion the district court stated:

"No authority need be cited for the proposition that the net value of property held in joint tenancy, once placed in joint tenancy, becomes the property of those persons named in joint tenancy in equal shares. This is so even though one of the joint tenants may have contributed more toward the acquisition and maintenance of that joint tenancy property than another of the joint tenants. . . ."

In its Conclusions of Law, the district court stated in paragraph VI thereof:

"The property placed in joint tenancy becomes the property of those persons named in joint tenancy in equal shares regardless of contribution towards acquisition and maintenance of such joint tenancy property, and this rule is applied in determining interest ownership of the joint tenancy property herein. . . ."

The trial court entered judgment attempting to divide the jointly held property equally in net value between the parties, based upon the view that the law mandated such a division. This is an erroneous interpretation of the North Dakota law, which provides that the court in a separation proceeding, may make "such division of the joint or separate property of the husband and wife, as may appear just and proper". § 14–06–03, N.D.C.C. The court must make an equitable division of the property, but this does not necessarily require an equal division of the property, whether jointly held or otherwise. *Rambel v. Rambel*, 248 N.W.2d 856, 858 (N.D.1977); *Grant v. Grant*, 226 N.W.2d 358, 363 (N.D.1975); *Novlesky v. Novlesky*, 206 N.W.2d 865, 870 (N.D.1973).

Under the circumstances of a particular case, an *equal* division in net value of the jointly held property may very well constitute an equitable division which is just and proper and in compliance with the statute. Where, however, an equal division is made upon the erroneous view that the law mandates an equal division of jointly held property in all cases, the division must be set aside.

■■■ 3. The district court maintained the view that the conduct of the parties during the marriage is a proper factor for consideration in determining whether and to what extent alimony should be granted, but it is not a proper consideration for making a division of the property. During the trial, the district court stated:

"I have enunciated from the start that I felt we should not go into the difficulties which these people have had with one another, principally because of the rulings which the Supreme Court has come down with now on the issue of the effect of that testimony on division of assets, but you didn't ask for alimony at all, and Mr. Lundberg [attorney for Henning] specifically asked that nobody be given any alimony, and that is what you are talking about when you start talking about the conduct of the parties as distinguished from the division of assets."

This view of the court is a misinterpretation of the law. The conduct of the parties during the marriage is a proper factor which the court *may*, in its sound discretion, consider in determining an equitable division of the property. *Grant v. Grant*, 226 N.W.2d 358 (N.D.1975); *Novlesky v. Novlesky*, 206 N.W.2d 865 (N.D.1973).

Whether or not the conduct of the spouses in a particular case is a significant factor in dividing the property between them is a matter within the sound discretion of the trial court.

In this case it is apparent the district court believed that both parties were equally at fault and that neither was more nor less blameworthy than the other. Consequently, the court awarded both parties a separation based upon irreconcilable differences. Under such circumstances the district court, in making the property division, certainly did not abuse its discretion by giving little or no weight to the parties' conduct. Nevertheless, the court's refusal to consider the parties' conduct was based upon the erroneous view that the law would not permit consideration of conduct in making a property division, and was therefore in error.

We conclude that the cumulative effect of the several misinterpretations of law by the district court upon which the property division was made resulted in prejudicial error.

■■■ The second issue Henning has raised on appeal is whether the district court committed reversible error by using the report of a court-appointed appraiser as a basis for dividing the real property without having the report formally introduced into evidence or allowing the parties to cross-examine the court-appointed appraiser.

During the trial June introduced figures as to the "approximate value" of the real property owned by the parties, based on assessed values multiplied by a conversion factor supplied by the tax equalization director for McLean County. Henning introduced the testimony and report of Mr. Duane Lindberg, the owner of an insurance and real estate agency in Stanley, North Dakota, as to the value of the real property owned by the parties. The court stated at the conclusion of the trial that Mr. Lindberg was not a qualified appraiser, that the evidence submitted by the parties regarding the value of the real property was widely divergent, and that the court would not consider Mr. Lindberg's testimony as a basis for dividing the property. The court further indicated that unless the parties were able to agree on fair market values for the real property, the court would appoint an independent appraiser whom the parties would be given an opportunity to cross-examine.

The district court appointed Mr. H. A. Swenson of Bismarck, North Dakota, to appraise the fair market value of the real property owned by the parties. Mr. Swenson submitted the report of his appraisal to the court. Based upon Mr. Swenson's appraisal, the court divided the jointly held real property between the parties. In addition, the court awarded June the sum of $3,900.00 from Henning as an adjustment for the disparity in value of the jointly held real property awarded to each. The record does not reveal any instance in which the parties were given an opportunity to cross-examine Mr. Swenson prior to the court's use of his appraisal report.

The district court has the inherent power to appoint an impartial expert witness on the court's own motion. *See,* Annot., 95 A.L.R.2d 390, 392 (1964).[1] The trial judge has wide discretion concerning the manner in which he uses an appointee's testimony, providing the parties' rights are not violated. We find that the district court erred by using the report of the court-appointed appraiser wherein the report was not introduced into evidence and the parties were not given an opportunity to cross-examine the appraiser. See *Brown v. St. Clare's Hospital,* 13 A.D.2d 734, 214 N.Y.S.2d 614 (1961); *see also Contra Costa County Flood Control and Water Conserv. District v. Armstrong,* 193 Cal.App.2d 206, 14 Cal.Rptr. 68 (1961).

1. Rule 706 of the North Dakota Rules of Evidence specifies in detail the procedure to be followed regarding a court appointment of an expert witness. Since these rules were not effective until February 15, 1977, they did not govern the trial of this case, nor are they dispositive of this issue on appeal.

Henning also raised the issue of whether the district court committed reversible error by failing to make an equitable division of the property between the parties.

Section 14–06–03, N.D.C.C., provides the standard by which the court may make a division of property upon decreeing a separation:

> "Upon decreeing a separation, the court may make such . . . division of the joint or separate property of the husband and wife, as may appear just and proper."

The trial court's determination of the property division is a question of fact. It will not be set aside on appeal unless it is either clearly erroneous, pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure, or it is induced by an erroneous view of the law. *Kostelecky v. Kostelecky*, 251 N.W.2d 400, 402 (N.D.1977); *Bellon v. Bellon*, 213 N.W.2d 376, 380 (N.D.1973).

The judgment of the district court must be reversed and the case remanded for redetermination of the property division on the ground that the division was induced by erroneous interpretations of law. It is, therefore, neither necessary nor appropriate for this court to determine whether that division is inequitable. The parties are entitled to a division of their property by the district court free from the influence of erroneous interpretations of law. It is for this purpose that the judgment is reversed and the case remanded.

For the reasons stated in the opinion, the judgment of the district court regarding the division of property between the parties is reversed and the case is remanded for a new trial.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VOGEL, Justice, concurring in part and dissenting in part.

I concur in the result, and in all of the opinion except that part holding that the trial judge had a duty to consider the relative fault of parties in making a division of property.

The trial court awarded the divorce on the ground of irreconcilable differences, a ground added to the former statutory grounds for divorce by the 1971 Legislature (Chap. 149, 1971 S.L., codified as subdivision 8 of Section 14–05–03 and Section 14–05–09.1, N.D.C.C.).

In *Novlesky v. Novlesky*, 206 N.W.2d 865 (N.D.1973), decided about 75 days before I joined the Court, former Justice Teigen, in a concurring opinion, argued that the adoption of irreconcilable differences as a ground for divorce meant that both the granting of the divorce and the division of property should be based on considerations other than fault. When I joined the Court, I accepted the majority opinion as the law. After further experience with the way Fischer (Ruff) guidelines have been applied [see my dissent in *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977)], I now repent my error and suggest that the Court do likewise.

The case before us now presents a factual situation which gives us an opportunity to reconsider the question of whether the adoption of the ground of irreconcilable differences changes prior law as to the consideration of fault of the parties in connection with the division of property. The trial judge held (and I agree) that fault is not to be considered in division of property where the divorce is granted on the ground of irreconcilable differences, just as fault is not to be considered in the granting of the divorce on that ground.

The whole purpose of legislating the new ground for divorce was to "redirect the law's attention from an unproductive assignment of blame to a search for the realities of the marital situation" [Commissioner's Prefatory Note to Uniform Marriage and Divorce Act, 9 Uniform Laws Annot., Master Ed., p. 457]. I will not further recite the melancholy history of feigned grounds, strident name-calling and finger-pointing and mutually destructive charges of crime and misconduct which have turned our courts all too often into battlegrounds in which reputations are destroyed along

with marriages, and children are made spectators to mutual character-assassination by their parents.

Mercifully, we now have a statute which permits the dissolution of marriage without such degradation of all concerned. But, having acknowledged that fact, we must admit that little or nothing is accomplished in a vast majority of cases if fault enters again into the courtroom when property-division, alimony, and child-custody come up. We all know that few marriages are dissolved without division of property or the granting of alimony or the awarding of child custody. The majority opinion clings to the fault concept on these matters by insisting that the trial court must consider fault whenever property-division comes up in a contested case.

The idea that fault should be considered in property-division is not a mandate of the Legislature. The Legislature provided only that

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, . . ." Sec. 14–05–24, N.D.C.C.

The rule that fault must be considered in deciding on property division is a court-created rule, and it can be abrogated by the court. I believe it should be abrogated by the court.

The sparse legislative history of the passage of Chapter 149, 1971 Session Laws, indicates that its chief advocate was former District Judge Gefreh, who is described as saying [although we know that committee reports are summaries rather than direct quotations]:

"Irreconcilable differences could actually take care of all other grounds. . . .

This no-fault concept is primarily for the eyes of the children. One parent should not be blamed for the divorce in the eyes of the children. In order to carry this 'no-fault concept', amend 14–05–24,[1] distributing property in a fair manner without blaming the other. This is not absolutely necessary but would carry through with the 'no-fault' concept. . . . This may create better atmosphere for couples getting back together (no need for mud-slinging) . . ."

Another witness was Carl Peterson, an attorney for the State, who said,

"As it is now, the more dirt you throw the bigger share of property settlement you get."

Under "Committee Discussion" the report says:

"Adds one more ground for divorce. It is really up to the judge to see that the necessary arrangements are made. . . The Committee felt that this just eliminates the manufactured excuse and will protect the children from thinking one of the parents is to blame, which is damaging to children. . . ."

From this I conclude that the Legislature intended to eliminate fault from the division of property as well as from the granting of divorces on the ground of irreconcilable differences.

---

1. This was not done.