**PULKRABEK, INC., a corporation, Plaintiff and Appellant,**

v.

**YAMAHA INTERNATIONAL CORPORATION, Defendant and Appellee.**

Civ. No. 9357.

Supreme Court of North Dakota.

Dec. 19, 1977.

Mack, Moosbrugger, Leonard & Ohlsen, Grand Forks, for plaintiff and appellant; argued by Shirley A. Dvorak, Grand Forks.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant and appellee; argued by Gerald J. Haga, Grand Forks.

SAND, Justice.

Pulkrabek, Inc., appealed from a judgment of the district court of Grand Forks County, rendered against it and in favor of Yamaha International Corporation (hereinafter Yamaha).[1] (The judgment in reality provided that the plaintiff recover of the defendant $2,574.58, and that the defendant recover from the plaintiff $2,574.58.)

Pulkrabek, Inc., had a written franchise agreement with Yamaha to sell its products, including motorcycles, snowmobiles, parts and accessories, which was terminated on or about 22 September 1969.

Pulkrabek, Inc., brought action against Yamaha alleging that it had an oral telephone agreement with Yamaha to return inventory parts to Yamaha for credit on the balance due on Pulkrabek's open account with Yamaha, and the excess to be refunded directly to Pulkrabek. Relying upon the oral agreement, Pulkrabek sent inventory parts valued at $5,828.25 to Yamaha, and that after deducting the amount of $2,574.58 Pulkrabek owed Yamaha on open account, Pulkrabek, Inc., was entitled to the sum of $3,253.67. Yamaha answered by denying the agreement as relating to the return of the inventory parts and counterclaimed in the amount of $2,574.58, which was the amount Pulkrabek owed to Yamaha on open account.

At the trial, Robert Pulkrabek testified that in February or March 1970, in a telephone conversation with an unidentified woman in the credit department of Yamaha, an agreement was reached to return the inventory parts to Yamaha, who would send them a check for the difference after deducting the amount owed on open account; but that Pulkrabek never received payment.

James Pulkrabek, at the trial, testified Robert directed him to place the inventory parts in boxes and prepare them for shipment and that from the price list book on parts he determined the value of the parts placed in boxes to be $5,871.77. The price list book was not introduced into evidence. He further testified that he sent 35 boxes of inventory parts to Yamaha in California.

At the trial, Yamaha introduced a receipt for certified mail signed by Robert Pulkrabek on 19 June 1970, and a letter from Yamaha to Pulkrabek, Inc., dated 16 June 1970. The letter, in part, stated:

"We are not obligated nor are we interested in taking the parts back for credit.

1. The case was tried to the court without a jury.

Accordingly upon receipt of your $2,574.58 check in settlement of your parts account and shipping instructions we will return the parts to you.

"If we do not receive your check and instructions within fifteen days, the parts will be treated as collateral and disposed of at private sale as provided for under the Uniform Commercial Code."

Yamaha also introduced into evidence an exemplar copy of the franchise agreement.

The trial court found that Pulkrabek failed to establish a contract or an agreement under which the inventory parts were returned; that Pulkrabek failed to furnish or provide sufficient facts to establish a specific value of the inventory parts; that the return of the parts was not governed by paragraph 21 of the franchise agreement because more than thirty days had expired since the termination of the franchise agreement; that the inventory parts were received by Yamaha pursuant to the letter of 16 June 1970; that Yamaha had received "some value from the returned parts and since plaintiff [Pulkrabek] has failed to establish a value it appears that a value of $2,574.58 as settled [*sic*] of the collateral claim under the U.C.C. is in order"; and that Yamaha established a counterclaim against Pulkrabek in the amount of $2,574.58.

The trial court ordered and adjudged that Pulkrabek recover of Yamaha $2,574.58 and that Yamaha recover from Pulkrabek $2,574.58, and that each party pay its own costs and attorney fees, and that, therefore, an offset be worked out under these amounts and neither party take anything from the other.

Pulkrabek appealed from this judgment and contended that the trial court erred in not treating the testimony of James Pulkrabek as prima facie evidence of the value of the returned parts and by not considering the testimony as to value a part of the business records of Pulkrabek.

Pulkrabek also contended that the letter of 16 June 1970, reportedly from Yamaha to Pulkrabek, the receipt of which was not denied by Pulkrabek, should not have been admitted into evidence.

■ Before we can properly evaluate the contentions of Pulkrabek as to whether or not error was committed by the trial court, it is necessary that we examine the alleged contract made by telephone. The evidence discloses the telephone conversation with an unidentified woman who allegedly was a part of the credit department of Yamaha. The evidence regarding the alleged telephone agreement does not disclose any specifics as to how the parts were to be valued or what criteria were to be used to determine the value of the parts. Neither does the evidence disclose if the parts were of any use because of age, etc. We agree with the trial court that a binding agreement to return the parts was not reached. We also agree that there was evidence supporting the trial court's conclusion that Pulkrabek returned approximately 35 boxes of inventory parts of substantial value to Yamaha.

The court, however, specifically found that Pulkrabek failed to set forth sufficient facts to establish a specific value. The trial court orally rendered an opinion with reference to its findings, which is considerably more specific than the formal findings of fact. The court, in its oral opinion, noted that there was no manifest of parts accompanying the shipment identifying the contents as to parts number and value; that "the form upon which the inventory was made in no way related to the Yamaha Corporation or its method of accounting, but, in fact, refers to gasoline purchases from" an oil company which apparently did business with Pulkrabek; that the inventory is not signed at any point, and that the price list from which the value of the parts was determined was not introduced into evidence. In summary, the court found that the evidence was insufficient to create a prima facie case as to actual value of the inventoried parts.

We have said that in review we will take the findings of fact where we find them, regardless of the label that may be placed upon them. *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972); *Jahner v. Jacob,*

233 N.W.2d 791 (N.D.1975), *cert. den.* 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975).

Nevertheless, Pulkrabek strongly contends that the court erred in not giving full recognition and weight to the price list as a business record, and refers to § 31–08–01, North Dakota Century Code, as its authority.

■ In addition to § 31–08–01, NDCC, the North Dakota Supreme Court adopted Rules of Evidence, effective 15 February 1977. Rule 803(6) refers to business records and provides that they are admissible as evidence "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report," etc. Rule 803(6) is in complete harmony with § 31–08–01(2), which requires that the record, in order to be admissible, "was made in the regular course of business, at or near the time of the act, condition, or event."

Pulkrabek relies upon *Interstate Collection Agency, Inc. v. Kuntz,* 181 N.W.2d 234 (N.D.1970), as its authority, but in that instance the records involved "were the books containing the originals and carbon copies of the record of the sales as they were made from day to day by the grocer's employees as the groceries were purchased and charged to the Coffee Cup . . ." The Court in *Kuntz, supra,* observed that § 31–08–01, NDCC, does not make all business records competent evidence regardless of the manner and the purpose for which they were made. It noted that the rules of relevancy have not been changed, nor does the statute make a record admissible when oral testimony to the same effect would not be admissible. The statute merely provides a method of proof of the admissible act, condition, or event.

■ In the instant case, the parts list memorandum establishing value was made after Pulkrabek had been out of business. The transaction was not in the regular course of business, nor was the compilation of the price list in the regular course of business. If anything at all, it was a winding up of business rather than an occurrence in the regular course of business. In addition, even though we agree that the evidence was admissible it does not follow that the court must accept such evidence as an absolute fact or as prima facie evidence of a fact.

*Schwartzenberger v. Hunt,* 244 N.W.2d 711 (N.D.1976), concluded that the trial court can reject entirely the uncontradicted testimony of an interested party as distinguished from a disinterested party provided the rejection is not done arbitrarily. See, *Joseph v. Donover,* 261 F.2d 812 (9th Cir. 1958). The reasons given by the trial court, as found in the oral memorandum opinion, and in the findings of fact, do not support a conclusion that the price list was rejected arbitrarily.

"In short, the Court finds that such evidence is insufficient to create a prima facie case as to actual value and that in order to establish that prima facie case there would needed to have been some introduction of a pricing from Yamaha, the book under which Mr. Pulkrabek made his computation, and it also to be noted that Mr. Pulkrabek never did sign the inventory. And further, that there is no indication that a copy of this list was sent to Yamaha to aid them in their examination of the contents of the shipment." (Oral Memorandum Opinion.)

■ We conclude that the trial court was justified in rejecting the price list and in not treating it as prima facie evidence, but this raises a further question: What evidence, if any, is in the record permitting the trial court to find that the parts returned were valued at $2,574.58? The record does not disclose any evidence which could be relied upon to determine the value of the parts returned either by inference or otherwise.

In *Beck v. Lind,* 235 N.W.2d 239, 254 (N.D.1975), we said:

"Not in every case where the only testimony on damage is either zero or $500 can we conclude that a $300 award is not supported by the evidence, but when there is a strong inference that the trier of fact compromised between the right to

recover and the proved damages sustained, we are justified in concluding that there is error. See *Dege v. Produce Exchange Bank of St. Paul,* 212 Minn. 44, 2 N.W.2d 423, 425 (1942), and *Schore v. Mueller,* 290 Minn. 186, 186 N.W.2d 699, 702 (1971).

We therefore conclude that the trial court's finding that the returned inventory parts had a value of $2,574.58 is clearly erroneous.

The trial court, in its oral memorandum opinion, also stated:

"In other words, that Yamaha took back the parts for whatever their value, greater or less than the $2,574.58, and would and should have a right to dispose of them and to apply as proceeds of whatever value they may be to their account with the Pulkrabek, Inc. And that while Mr. Myerchin is correct, the corporation was not bound to receive and accept such a shipment, their statement in their letter after the expiration of 15 days would constitute an acceptance."

The trial court was correct as far as it went. It recognized in part that Yamaha acknowledged receipt of the goods but did not fully recognize the conditions under which the acceptance was made. It did not treat the transaction as being pursuant to the Uniform Commercial Code.

With reference to the admission into evidence of the letter from Yamaha to Pulkrabek, which Pulkrabek now claims should not have been admitted, Justice Vogel, in *Schuh v. Allery,* 210 N.W.2d 96, 99 (N.D. 1973), said:

"We believe that a trial judge, in a nonjury case, should ordinarily admit all evidence which is not clearly inadmissible. A judge who is competent to rule upon the admissibility of evidence can distinguish in his own mind, when deliberating his ultimate decision, between evidence which is admissible and evidence which is not admissible. The introduction of allegedly inadmissible evidence in a nonjury case will rarely be reversible error, and it may often avoid a possible reversal in cases where this court, on appeal, holds that the evidence is admissible."

We quoted this statement in *Beck v. Lind, supra,* and in several other decisions since then. It applies fully to the instant case. The judge in this case relied upon the letter and made findings of fact and conclusions of law taking into account the contents of the letter. However, because it has been questioned by Pulkrabek as to its admissibility, we must determine whether or not such letter, under the factual situation here, should have been relied upon by the trial court.

On the letter in question, Yamaha introduced in evidence a receipt for certified mail containing the signature purportedly that of Robert L. Pulkrabek, the addressee of the mail, indicating that the subject matter was delivered 19 June 1970. It contained a return address of Yamaha International Corporation, with an address at California. Pulkrabek did not deny receiving the letter, but professed to have no recollection of receiving it. The letter in question was dated 16 June 1970.

The signed receipt for certified mail constituted sufficient evidence for the admission of the letter. Whether or not the letter of 16 June was the item covered in the signed receipt is a question of fact for the trier of facts to determine by taking into account all of the attending circumstances. Furthermore, the letter constitutes evidence that Yamaha received the inventory parts without which Pulkrabek may have difficulty in proving any of its claims. We conclude that the admission into evidence of the signed receipt for certified mail and the letter did not constitute error.

With reference to the counterclaim by Yamaha in the amount of $2,574.58, Pulkrabek's complaint acknowledges the amount due and owing on open account. The amount is further recognized in the letter of June 16. We therefore conclude that the judgment in favor of Yamaha and against Pulkrabek in the amount of $2,574.58 is in accordance with the evidence and applicable law, and is therefore affirmed. However,

the judgment in favor of Pulkrabek against Yamaha in the same amount is reversed.

The disposition of the inventory parts issue has not been resolved, especially as to Yamaha's alleged acceptance as collateral under the Uniform Commercial Code.

Yamaha did not inform the trial court, nor did the trial court direct Yamaha to specifically state under which provision of the Uniform Commercial Code Yamaha accepted as collateral the inventory parts returned by Pulkrabek. Neither did Yamaha disclose to the trial court the procedures it proposed to follow under the Uniform Commercial Code to account and give credit to Pulkrabek on the disposition of the inventory parts. This is a responsibility resting squarely upon Yamaha.

Having determined that the findings of fact of the trial court with reference to the value of the inventory parts are not supported by the evidence and are therefore clearly erroneous, we believe the case should be remanded for further proceedings.

Accordingly, we remand this case to the trial court so that it may direct Yamaha to specify the appropriate provisions of the Uniform Commercial Code under which Yamaha accepted as collateral the inventory parts and procedures it will follow under the Uniform Commercial Code to account and give credit to Pulkrabek on the disposition of the inventory parts. The court may also specify a period of time in which this is to be accomplished and on failure on the part of Yamaha to meet the deadline the court may order a new trial on the value of the inventory parts alone, or fashion other appropriate equitable proceedings as the court may deem just.

The judgment as pertaining to the counterclaim in favor of Yamaha is affirmed in the amount of $2,574.58, but the judgment in favor of Pulkrabek in the amount of $2,574.58 is reversed and the case is remanded for further proceedings in accordance with the above opinion.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.