Gilbert **RUMMEL, Plaintiff and Appellee,**

v.

Stella **RUMMEL, Defendant and Appellant.**

**Civ. 9418.**

Supreme Court of North Dakota.

March 15, 1978.

Rehearing Denied April 20, 1978.

Maurice R. Hunke, Dickinson, for plaintiff and appellee.

Floyd B. Sperry, Bismarck, for defendant and appellant.

SAND, Justice.

This is an appeal by Stella Rummel from a Stark County district court judgment and from an order[1] amending the judgment in a divorce action.

After the trial, the court awarded both parties a divorce on the grounds of irreconcilable differences; granted custody of the two minor children to Stella; made a division of the parties' properties; and ordered Gilbert Rummel to pay temporary support in the amount of $300.00 per month for the support of the two minor children, and $100.00 per month for the support of Stella, until liquidation of the parties' real and personal property was completed. Judgment was entered accordingly.

After the entry of judgment, original counsel for Stella withdrew. Thereafter she was represented by present counsel.

■■■ At the outset we find it appropriate to observe that generally, in the absence of unusual circumstances, new counsel on appeal is limited to the same issues that prior counsel would have been able to raise. Merely becoming a successor to prior counsel does not give him the right to raise issues on appeal which prior counsel could not have raised. The issues and the positions of the respective parties remain the same.

"It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy." *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D. 1975); *Welken v. Conley*, 252 N.W.2d 311, 317 (N.D.1976).

Neither, on appeal, should we allow the introduction of new issues not presented to the trial court.

■■■ Issues presented for the first time to the court in a motion for a new trial are generally too late to be seriously considered to make a new rule of law or to refine an existing rule. *Kirchoffner v. Quam and Maple River Golf Club*, Civil No. 9398, 264 N.W.2d 203 (N.D.1978).

In *State v. Motsko*, 261 N.W.2d 860 (N.D. 1977), we said:

---

1. The order amended the judgment to authorize the receiver to pay certain expenses in connection with the sale of property and corrected the error with reference to the advance inheritance for Gilbert from $1,500.00 to $15,000.00.

"It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness. In all fairness, courts may pay some respect to the right and duty of attorneys, whether court-appointed or not, to use judgment in the heat of a trial, and we must have some doubts about the accuracy of second-guesses later on."

We also said:

"It is just as true in criminal cases as in civil cases, and as true in appeals as it is in motions to reopen judgments, that parties will not be relieved from free, calculated, deliberate choices they have made [*City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324 (N.D.1975); *Schnell v. Schnell,* 252 N.W.2d 14 (N.D.1977)] and that it is not our function to allow second-guesses on trial strategy [*Waletzko v. Herdegen,* 226 N.W.2d 648 (N.D. 1975); *Rummel v. Rummel,* 234 N.W.2d 848 (N.D.1975)]."

Stella raises four issues on appeal. She contends that

(1) The trial court failed to set out its findings of fact as required by Rule 52(a), North Dakota Rules of Civil Procedure, and failed to make a finding of fact as to value of the property and its indebtedness;

(2) The trial court committed error in not determining the issue of fault or faults of the parties;

(3) The court erred in placing the parties' property in a receivership when it was not

for the sole purpose of securing and enforcing payments to be made by one of the parties to the other for the care of the children or either party pursuant to § 14–05–25, North Dakota Century Code; and

(4) The trial court erred in directing payment of $15,000.00 to Gilbert as a reasonable amount to be received for advance inheritance and gifts from his parents.

On the first issue, Stella contended that the trial court erred by not setting out more fully the facts in its findings of fact and by referring to its oral decision which was contained in the transcript of the trial but which was not transcribed until a later date.

The trial court's formal findings of fact, conclusions of law, and order for judgment contained the following statement in the findings of fact:

"That the Court in its Memorandum Decision entered into the record of proceedings herein did state all of the factors considered by the Court in its determination of the disposition to be made of such real and personal property and indebtedness of the parties and did state its reasons therefor."

Stella contends that the reference in the court's formal findings of fact to its oral decision announced at the conclusion of the trial was not available until the record was transcribed at a later date and as such did not satisfy the requirements of Rule 52(a), NDRCivP.

Rule 52(a), NDRCivP, as is pertinent to this question, provides as follows:

"If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. . . ."

"In *Higgins v. Mills,* 181 N.W.2d 726, 730 (N.D.1970), this court said that where the memorandum of decision clearly contains findings of fact and conclusions of law it is not necessary that they be set forth in the judgment. Pursuant to Rule 52(a), NDRCivP, the opinion or memorandum of decision must be filed to meet this require-

ment. In order to be filed it must be in writing, as the term "memorandum of decision" implies. An oral decision not transcribed does not meet the requirements of Rule 52(a). Had the oral opinion been transcribed, signed, and filed we would have a different situation. But because the oral opinion has now been transcribed and made part of the record on appeal, we may examine it to help elucidate the formal findings of fact.

We note that the court in this case filed formal findings of fact, conclusions of law, and order for judgment. The real issue, then, is whether or not these findings of fact, as they may be clarified by the oral opinion, are adequate for the disposition of the issues involved at the trial court.

■ In making this determination, we will recognize and consider findings of fact regardless of the label that may be placed upon them or that they may be denominated by their placement as conclusions of law. *Pulkrabek, Inc. v. Yamaha International Corporation*, 261 N.W.2d 657 (N.D.1977); *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975). We will also take into account that Stella did not make a motion as permitted under Rule 52(b), NDRCivP, to either amend or make additional specific findings as to the value of the property even though she made a motion for a new trial and to reopen the judgment, which was denied. The inadequacy of the findings of fact was raised for the first time on appeal. Stella's contention in this respect will be carefully scrutinized. *Kirchoffner, supra.*

On the disposition of the property, the trial court decreed that

"The balance remaining, if any, shall be divided by the receiver *equally between the parties* hereto, after determining and applying various credits and adjustments for any personal property which either of the parties may have selected pursuant to the provisions of Paragraphs 6(a) and 6(b) hereinabove." [Emphasis added.]

Earlier in the judgment the court provided that Gilbert should have the first right to select and retain certain property used in farming and ranching operations and that Stella would have the first right to select and retain certain property, and that the real property to be sold for a sum not less than $207,559.00, which was the appraised value of the property, and that the receiver pay out of the proceeds first the various debts and obligations of the parties.

■ Counsel has not illustrated the need for the additional findings of fact or how they would be significant in the disposition of the property. Neither does the need, if any, seem to be apparent. The property is to be disposed of at a public sale. Either of the parties may bid on the property. The ultimate proceeds of the sale will be divided equally after first paying obligations and indebtedness, except for the $15,000.00 allowed to Gilbert as advance inheritance. Under these circumstances, we fail to see a need or benefit for additional or more specific findings of fact as to the exact value of the property involved and its indebtedness.

The ultimate disposition of this issue, however, rests in part, at least, upon the resolution and determination of the other issues raised on appeal, including whether or not they are properly before this court for review.

Stella contended that the trial court committed error in not determining the issue of fault or faults of the parties.

■ The complaint seeking the divorce was founded on irreconcilable differences. The divorce was granted on those grounds. In determining a divorce action on irreconcilable differences the court need only find that irreconcilable differences exist and is not required to go into the conduct or, as it is sometimes referred to, the fault of the parties. Irreconcilable differences as grounds for divorce, we believe, was adopted to eliminate the public accusation of wrongdoing by the parties.

■ However, as to other matters, such as custody of children, child support, support or alimony of either spouse, and division of property arising out of divorce, a

number of items need to be considered, including conduct of the parties. In awarding custody of the children, the court must take into account the best interests of the children. In the distribution of the property, total contribution of both parties is a factor.

In this case, the court awarded custody of the minor children to Stella. She is not complaining that the court should have granted custody of the children to Gilbert, nor do we understand her argument on appeal to mean that alimony or child support payments were not adequate. Neither does she contend that the property, except for the $15,000.00, was not equitably distributed. Stella did not state why additional or more specific findings of fact were essential or what they would have accomplished or changed regarding custody of the children or the distribution of the property.

Furthermore, Stella has not appealed the award of custody of the children or the division of the property made by the trial court. In fact, she gave tacit approval to the disposition of the property at the hearing before the trial court. On the proposition as to the role conduct plays in the distribution of property, we said in *Hultberg v. Hultberg*, 259 N.W.2d 41, 45 (N.D. 1977):

"Whether or not the conduct of the spouses in a particular case is a significant factor in dividing the property between them is a matter within the sound discretion of the trial court."

On the same subject, in *Haberstroh v. Haberstroh*, 258 N.W.2d 669, 672 (N.D. 1977), we said:

"Under § 14–05–24, N.D.C.C., the district court may consider, in determining the division of property or in determining whether either party is entitled to alimony, the respective ages of the parties to the marriage, their earning abilities, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage, and such other matters as may be material."

These factors constitute the present guidelines, and conduct of the parties during the marriage is only one of the factors which the trial court may consider in dividing the property.

Except for a possible inference which may be drawn from *Fine v. Fine*, 248 N.W.2d 838, 843 (N.D.1976), we have never specifically said that the trial court must make an express finding as to each of the factors enumerated. Rather, we have said that there is no rigid rule for the division of property and that each division depends upon the facts and circumstances of the individual case. *Rohde v. Rohde*, 154 N.W.2d 385 (N.D.1967); *Nicholson v. Nicholson*, 126 N.W.2d 904 (N.D.1964). In the absence of a challenge to the property division, except for the $15,000.00 allowed as an advance inheritance, or award of custody or support payment, we cannot say that the trial court committed reversible error by not making a specific finding of fact as to conduct or, as Stella claims, faults of the parties during their marriage.

We will now consider whether or not the trial court erred in placing all of the property in receivership, and by appointing a specific receiver. Stella contends that the purpose of the receivership was not for securing and enforcing any support payments to herself or the children pursuant to the provisions of § 14–05–25, NDCC, and therefore the court did not have authority to appoint the receiver and put the property in receivership.

In North Dakota, the district court has original jurisdiction of all causes and has the authority to issue writs which are necessary to the proper exercise of its jurisdiction. Section 92, new Judicial Article of the North Dakota Constitution. This necessarily implies that the court has the authority to appoint a receiver, conservator, or trustee, as the case may be, to carry out

its decree or judgment. Stella contends that the authority contained in § 14–05–25, NDCC, does not constitute authority to appoint a receiver for an extended period of time for the purpose of conducting the sale and other matters in winding up the marriage dissolution. We agree that the authority to appoint a receiver under § 14–05–25, NDCC, is limited for the purpose of providing security. We believe, however, that the reference to § 14–05–25, NDCC, in the conclusions of law and judgment was a clerical mistake. Gilbert's counsel, who presumably drafted these documents, admits in his brief that the reference to § 14–05–25 was a mistake.

We further note that the court in its oral decision, as it appears in the transcript, made no reference to any statutory authority in announcing its appointment of a receiver to take into its possession all the property of the parties and to proceed to arrange for a sale of all of the property. ▆▆▆ Stella, at the hearing before the trial court, agreed that the sale of the property as discussed by the court would make the most sense of all of the alternatives considered. We believe that where the parties tacitly or affirmatively agree to the sale of the property in a divorce action and where neither party trusts the other party to conduct the sale, the court is justified in appointing a receiver, conservator, or trustee to take into possession the property and to conduct a sale. The courts cannot be expected to perform this function in itself and out of necessity has the implied authority to make an appointment for such purposes. A party attacking an order who has voluntarily and knowingly consented to, or tacitly approved it, will not be received favorably by the appellate court without a showing of fraud or deception.

The proceeding by the trial court in this instance can be compared to a dissolution and winding up of a partnership. Marriage is in a sense a partnership. The power to make the appointment of a receiver or trustee or conservator is implied in § 14–05–24, NDCC. Both parties were interested in and expressly desired bidding on the property.

Stella was represented by counsel during the entire proceedings and raised no objection to the appointment of a receiver, but in fact tacitly agreed to this. Her contention now will not be met with favor. Our references to and quotations from *Welken v. Conley, Kirchoffner* and *Motsko, supra*, apply fully here. See also, *Buzynski v. Buzynski*, 369 Mich. 129, 119 N.W.2d 591 (1963). We believe the trial court possesses broad discretion in making and enforcing property divisions in divorces. The appointment of a receiver is merely an aid in carrying out the decree of property distribution. The appointment of a receiver is a reasonable exercise of the court's discretionary power and judgment which may be necessary to implement the property division it has decreed. *Elliott v. Elliott*, 422 S.W.2d 757 (Tex.Civ.App.1968). No showing has been made that the court abused its discretion in appointing the receiver. We therefore conclude that the court had the authority in the equitable distribution of property in a divorce proceeding to appoint a receiver for the sale of the parties' property, and also to direct the receiver to sell the property piecemeal or to dispose of it in any manner to best effectuate the court's judgment. We construe the decree as permitting both parties to bid on any parcel or item of property which is up for sale and to use any collateral or financial interest either party may have as payment for the purchase of the property being sold or disposed of.

▆▆▆ In this respect we take special notice that in this case Stella was represented by different counsel at the trial level and on appeal, at which time new legal strategy and theories were raised. Stella's first attorney did not argue or present evidence of the parties' conduct in reference to a division of the property, nor did he or his client object to the appointment of a receiver, but rather tacitly approved. We have said several times that a new trial will not be granted a petitioner for the purpose of adopting a different legal theory from that adopted at the former trial. See *Rummel v. Rummel*, 234 N.W.2d 848 (N.D.1975). (Not the same parties.)

The proceeds of the sale are to be divided equally, except Gilbert is to receive $15,-000.00 extra as a reasonable amount to be considered as advance inheritance or gift from his parents. The court in essence divided all of the property equally except for the $15,000.00.

We will now consider the issue whether or not the court erred in allowing Gilbert the sum of $15,000.00 as a reasonable amount to receive for advance inheritance or gift from his parents. On this subject Gilbert testified that during his marriage he purchased from his parents a tract of real estate for the price of $10,000.00 less than the land's market value. He also testified that at the time he received the gift or advance inheritance from his parents of machinery and livestock valued at between $6,000.00 and $7,000.00.

At the trial, Gilbert's father testified that these items were intended as an advance inheritance to Gilbert. The conclusions of law providing for the payment of $15,000.00 to Gilbert stated that it was "a fair and reasonable amount to be received by the Plaintiff [Gilbert] for advance inheritance and gifts from his parents considering all of the evidence related thereto including the evidence that the Defendant received from her mother some gifts and advance inheritance." As we stated earlier, we will recognize findings of fact regardless of the label that may be placed upon them.

In *Bohnenkamp v. Bohnenkamp,* 253 N.W.2d 439 (N.D.1977), and *Grant v. Grant,* 226 N.W.2d 358 (N.D.1975), we affirmed property divisions which gave considerable weight to the factor that part of the property accumulated during marriage was a gift from one spouse's family and was not treated as property accumulated by the parties as a joint effort. The evidence in this case supports the trial court's finding that the gifts attested to were intended for Gilbert, and as such constituted his additional contribution to the parties' property. Stella has not attempted to show an abuse of discretion on the part of the trial court in restoring this property to Gilbert by directing payment of the $15,000.00 to

him. Our review of the record on this issue discloses no error.

We stated earlier that basically the findings of fact are not as complete as they should be, but at the same time we must take into account that the results would not be substantially altered if the court were to make additional and more specific findings of fact. We do not believe that findings of fact should be made merely to satisfy curiosity. Neither would the ends of justice be promoted in this instance if we were to remand this case to the trial court for additional and more specific findings of fact.

After having reviewed the issues raised and contended by Stella to be error, we conclude that the trial court did not commit error and we affirm its judgment. Our conclusion is also influenced by the fact that no better solution was submitted to the trial court by Stella for the distribution of the property than what the court has decreed.

Stella suggests that certain crops should be accounted for by the receiver or that there should be a complete determination thereof before the final distribution. If this is a problem, it may be brought to the attention of the trial court which has continuing jurisdiction over the receiver, and if the receiver has not properly accounted for certain things the court may require the receiver to do so and, if necessary, impose sanctions or financial penalties.

ERICKSTAD, C. J., and PAULSON, J., concur.

PEDERSON, Justice, concurring specially.

While I can agree that in this case (as I have in other cases) justice permits us to overlook technical noncompliance with Rule 52(a), NDRCivP, I do not agree with that language used in the majority opinion which leaves the impression that compliance is not required. Noncompliance can be more than a technicality as is illustrated by this Court's decision in *Struchynski v. Decker,* 194 N.W.2d 741 (N.D.1972). Maybe the decision after remand in that case was not

different from the previous decision—that the plaintiff had not proven his case. Would that mean that this Court required some "useless ritual?" I do not consider remands to require findings that understandably support the conclusion to be "useless ritual." See *Ellendale Farmers Union Cooperative Association v. Davis,* 219 N.W.2d 829 (N.D.1974). And I don't consider it useless ritual to point out that just because we are not remanding for a rewrite of the findings, does not mean that we consider the findings to be perfect.

I do not treat Rule 52(a) as a ceremonial rule. Compliance can improve both the "appearance of justice" and justice itself. The rule *requires* the trial court to "find the facts specially and state separately its conclusions of law thereon." It is not significant what label is placed on the paper on which findings are written. It is significant that we know that they were adopted, signed and filed. To the extent that findings reflect a reasoning process to arrive at the conclusion reached, they are of great significance to the acceptability of the conclusion and the confidence that people will have in the judicial process. To the extent that the findings truly reflect, understandably, the basis of the trial court's conclusions, they are entitled to a strong presumption in favor of their correctness.

To be satisfied that the decision is the right one is the first priority and for that reason I can concur in the results reached by Justice Sand's opinion. Secondarily, but importantly, because I think Rule 52(a) is a good rule and the only reasonable alternative to trial de novo on appeal, the rule merits enforcement. As long as we have it as a rule, we ought to insist on and work toward the fullest application thereof consistent with justice. I am not content to leave an appearance of lip service to the rule. See 9 Wright and Miller, Federal Practice and Procedure, § 2579, p. 716.

I believe that Rule 52(a) itself, and the majority opinion in *Fine v. Fine,* 248 N.W.2d 838, 843 (N.D.1976), must be read to be more than a "possible inference" that a trial court must make express findings on each fact issue which supports the conclusions reached by the trial court. There ". . . must be findings, stated either in the court's opinion or separately, which are sufficient to indicate the factual basis for the ultimate conclusion." *Kelley v. Everglades Drainage Dist.* (1934) 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485. See also *Schneiderman v. United States* (1943) 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. There are compelling reasons why we should be guided by United States Supreme Court interpretations of Rule 52(a). We have consistently done that. See *Estate of Elmer,* 210 N.W.2d 815 (N.D.1973).

The appellant in this case deserves an acknowledgment from this Court that his criticism of the findings is justified. Only because we are balancing theoretical compliance against realism (we do not want to force unwarranted expense and delay upon the parties nor do we want to clog the trial and appellate processes), we conclude that justice doesn't require remand in this case for the purpose of preparing adequate findings of fact.

VOGEL, Justice, concurring in part and dissenting in part.

I concur in the majority opinion, except for a few sentences which reiterate the majority's position that fault of the parties is to be considered in matters of custody, alimony, property division, and child support. My reasons for disagreement are stated in dissents in *Hultberg v. Hultberg,* 259 N.W.2d 41, 46 (N.D.1977), and *Haugeberg v. Haugeberg,* 258 N.W.2d 657, 666 (N.D.1977).